## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## PEORIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-10122 |
| ) | |
| CALVIN WILLIAMS, ) | |
| ) | |
| Defendant. ) | |

### ORDER AND OPINION

This matter is now before the Court on Defendant's Motion for Compassionate Release and Amended Motion for Compassionate Release requesting a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). (ECF Nos. 63, 67). For the reasons stated below, his Motions are DENIED.

### BACKGROUND

From 2011 to 2013, Defendant sold a significant amount of methamphetamine in Galesburg, Illinois. (PSR ¶¶ 9–19). He brought methamphetamine from Chicago to Galesburg one to three times per month and gave others involved in the conspiracy methamphetamine to sell. (PSR ¶¶ 11, 12, 17). At a minimum, he was responsible for distributing 936 grams of methamphetamine. (PSR ¶ 19).

On December 17, 2013, Defendant was indicted for conspiring to distribute more than 500 grams of a substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. (ECF No. 5). On April 7, 2014, the Government filed a notice of prior convictions pursuant to 21 U.S.C. § 851, which stated that Defendant had been convicted of two

prior felony drug offenses in Cook County, Illinois. (ECF No. 25). The charged drug weight and his two prior convictions exposed him to a life sentence. § 841(b)(1)(A).

The parties negotiated a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) for a twenty-year sentence. (ECF No. 35). On May 19, 2015, Defendant pled guilty to the charges in the indictment. (d/e 05/19/2015). At the time of sentencing, Defendant had a total offense level of 31 and a criminal history category of IV, establishing a guideline range of 151 to 188 months. (ECF No. 47 at 11; PSR ¶ 71). In accordance with the parties' plea agreement, on October 30, 2015, the Court sentenced Defendant to 240 months of imprisonment and eight years of supervised release. (ECF No. 40).

On March 29, 2021, Defendant filed a *pro se* Motion for Compassionate Release. (ECF No. 63). On April 1, 2021, the Court appointed counsel to represent him. (d/e 04/01/2021). On April 6, 2021, the U.S. Probation Office ("USPO") filed a memorandum stating that Defendant's proposed release plan to reside with his brother is suitable. (ECF No. 66). On April 9, 2021, counsel filed an Amended Motion for Compassionate Release. (ECF No. 67). On April 23, 2021, the Government filed a response in opposition. (ECF No. 69). This Order follows.

## LEGAL STANDARD

Before filing a motion for compassionate release, a defendant is required to first request that the Bureau of Prisons ("BOP") file a motion on his behalf. 18 U.S.C. § 3582(c)(1)(A). A court may grant a motion only if it was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf" or after thirty days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id*.

The compassionate release statute directs the court to make three considerations: (1) whether extraordinary and compelling reasons warrant a sentence reduction; (2) whether a reduction is consistent with the factors listed in 18 U.S.C. § 3553(a); and (3) whether a reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1). The Sentencing Commission, however, has not updated its policy statements since the First Step Act came into effect. Prior to the passage of the First Step Act, federal judges were only able to release prisoners for compassionate release reasons upon motion by the BOP. *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The First Step Act gave judges the power to grant compassionate release on a prisoner's own motion provided that the prisoner first allowed the BOP to review the request and make a recommendation or thirty days had passed since the prisoner submitted his or her request to the BOP. *Id*. The Seventh Circuit determined that the most recent policy statements from the Sentencing Commission do not apply to prisoner-initiated motions because the guidelines only address those motions that were brought pursuant to a BOP motion. *Id*. at 1180. Accordingly, the Seventh Circuit held that "because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement." *Id*. This Court is therefore not bound by the Sentencing Commission's analysis in § 1B1.13 or the application notes regarding the definition of "extraordinary and compelling reasons." *Id*. at 1181.

Despite the Seventh Circuit clarifying that courts are not bound by the Sentencing Commission's guidelines regarding compassionate release when an inmate brings the motion, the Seventh Circuit strongly suggested that those guidelines are still relevant to district courts' decisions. *Id*. at 1180. The Seventh Circuit explained that the guidelines provide a "working definition" of "extraordinary and compelling reasons" and cautioned that a judge who "strikes off

on a different path risks an appellate holding that judicial discretion has been abused." *Id*. "In this way the Commission's analysis can guide discretion without being conclusive." *Id*. The Seventh Circuit further stated that it would "expect" district judges to give the BOP Director's analysis regarding the prisoner's request "substantial weight, even though under the First Step Act the Director's views are not controlling." *Id*. Based on the available guidance from the Seventh Circuit, this Court will give great weight to the Sentencing Guidelines regarding motions for compassionate release even though they are not binding in this case.

If an inmate has a chronic medical condition that has been identified by the Centers for Disease Control and Prevention (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(A)(ii)(I). A chronic condition (i.e., one "from which [the defendant] is not expected to recover" reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. *Id*.

"The mere presence of COVID-19 in a particular prison cannot justify compassionate release—if it could, every inmate in that prison could obtain release." *United States v. Melgarejo*, No. 12-CR-20050, 2020 WL 2395982, at *5 (C.D. Ill. May 12, 2020). Rather, "a prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus." *Id*. at 5–6.

4

Finally, this Court is disinclined to grant a sentence reduction unless it determines that a defendant "is not a danger to the safety of any other person or to the community." *See* USSG § 1B1.13(2).

## DISCUSSION

Defendant's Amended Motion argues that his medical conditions and his "excessive" sentence constitute extraordinary and compelling reasons to grant compassionate release. (ECF No. 67). The Government urges the Court to deny his Amended Motion because he has not demonstrated extraordinary and compelling reasons justifying release and the § 3553(a) factors do not support a sentence reduction. (ECF No. 69). The Court finds the exhaustion requirements have been met, and therefore addresses this matter on the merits.

### I. Defendant failed to establish extraordinary and compelling reasons for a reduced sentence.

A court may grant a sentence reduction if it determines that "extraordinary and compelling reasons" justify the reduction and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, Defendant bears the burden of establishing that he is eligible for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016); *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

#### A. FCI Oxford

Defendant is currently located at Federal Correctional Institution Oxford in Oxford, Wisconsin ("FCI Oxford") with an expected release date of August 16, 2030. (ECF No. 66). FCI Oxford houses approximately 915 inmates. (ECF No. 69 at 7). As of April 29, 2021, one inmate at FCI Oxford is positive for COVID-19. *Federal Bureau of Prisons, COVID-19 Coronavirus,* https://www.bop.gov/coronavirus/ (last visited 04/29/2021). To date, all 673 inmates and seventy-five staff members who previously contracted COVID-19 have recovered. *Id*. The BOP is also

5

currently administering vaccines to both staff and inmates. (ECF No. 69 at 8). FCI Oxford has fully vaccinated 133 inmates and sixty-three staff. *Id.* With cases down and vaccinations up, it appears that the pandemic issues are waning in this facility.

### B. Defendant's health

Defendant alleges that he has experienced "emotional and physical problems" while incarcerated and suffers from elusive distal esophagus and erosive esophagitis, has had surgery to repair a hernia, and requires a special diet. (ECF No. 67 at 2). He also alleges that he has been vomiting three to five times per week and needs medication and "proton pump inhibitor therapy" to treat his medical conditions. *Id*. He claims that he has not received the required diet and is being treated only with over-the-counter medication. *Id*. He states that he has been in substantial pain, and if released, he would be able to receive appropriate treatment. *Id*. at 2-3.

On October 5, 2020, Defendant tested positive for COVID-19. (ECF No. 66). He claims that he still has symptoms but does not explain what symptoms he continues to experience. (ECF No. 67 at 1). According to the Government, his medical records from the BOP indicate that he made a full recovery and has no known lingering symptoms or side effects. (ECF No. 69 at 7). On March 30, 2021, he received his first dose of the COVID-19 vaccine. (ECF No. 66 at 1). By time this Order is issued, he may be fully vaccinated.

Here, the Court finds that Defendant has failed to establish extraordinary and compelling reasons for a sentence reduction based on his health and the current conditions at FCI Oxford. There is no evidence to establish that he is at higher risk of complications from COVID-19. According to the CDC, gastro-esophageal reflux disease ("GERD") does not place Defendant at an increased risk for experiencing severe complications from COVID-19. *See People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL AND PREVENTION,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited April 28, 2021). His BOP medical records show that he receives prescribed medications and ongoing medical care for GERD. Most significantly, Defendant previously contracted COVID-19 and his medical records indicate no lasting complications. He has already received at least one dose of the vaccine. As such, compassionate release is unwarranted.

## II.    The § 3553(a) sentencing factors weigh against release.

Defendant argues that he "has been a model citizen while he has been incarcerated" and that the sentence he received was excessive. (ECF No. 67 at 1). However, as noted above, Defendant entered into a plea agreement and his sentence of 240 months fell substantially below a life sentence. He was also responsible for large quantities of drugs.

The Government argues Defendant failed to demonstrate that he is not a danger to the community. (ECF No. 69 at 18). The Government claims that Defendant's release plan, while found to be suitable by USPO, remains largely irrelevant as his sentence, history of recidivism, dangerousness, and the § 3553(a) factors strongly disfavor release. *Id*. at 19. Specifically, Defendant's criminal history shows his violent and recidivist nature: three serious drug offenses and three gun offenses (one being a "Hobbs Act robbery"), in addition to a domestic battery. *Id*.

Defendant has received one disciplinary violation while in the BOP in March 2019 for phone abuse. (ECF No. 66 at 1). He completed ten educational and rehabilitative classes during his incarceration for the instant offense. (ECF No. 69 at 6). The BOP categorizes him as a medium risk recidivism level. *Id*. Defendant's disciplinary history and course work are commendable, but the fact remains that he has a serious and violent criminal history. Prior to the commission of the instant offense, Defendant was convicted of unlawful possession of controlled substance (1995,

7

probation revoked to one year IDOC); possession of a weapon by felon (1997, one year IDOC); domestic battery (2000, classification unknown, one year conditional discharge); manufacture/delivery of a controlled substance (2004, four years IDOC); unlawful possession of a weapon by felon (2009, two years IDOC); possession of cannabis (2013, two days jail); and interference with commerce by threat of violence (2013, Northern District of Illinois, time served concurrent with CDIL 13-10122). *Id*. at 2.

Defendant has served roughly half of his 240-month sentence. To further lessen his sentence would fail to reflect the seriousness of his offense, promote respect for the law, or provide adequate deterrence. Therefore, the Court finds that a sentence reduction is not supported by the § 3553 factors.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Compassionate Release [63] and Amended Motion for Compassionate Release [67] are DENIED.

ENTERED this 3rd day of May, 2021.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge